IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

BRANDI WHITAKER,

PLAINTIFF,

V.

COTTON BAYOU MARINA, INC.,

DEFENDANT.

CIVIL ACTION NO.:

JURY TRIAL DEMANDED

## COMPLAINT

### I. JURISDICTION

1. This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 12101 et seq. This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 28 U.S.C. § 2601, et. seq. ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

### II. PARTIES

2. Plaintiff, Brandi Whitaker, (hereinafter "Plaintiff") is a citizen of the United States, and a resident of Foley, Baldwin County, Alabama. Plaintiff was formerly employed by Defendant.

3. Defendant, Cotton Bayou Marina, Inc. (hereinafter "Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more

calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

4. STATEMENT OF THE FACTS

1. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 3 above.

2. Defendant hired Plaintiff on or about December 23, 2015.

3. Defendant employed Plaintiff as a Server at the Tacky Jack's 2 restaurant located on 184 Ft Morgan Road in Ft Morgan, Alabama.

4. During the time that Plaintiff worked for the Defendant, she was never written up for any performance issues.

5. At all times relevant to this complaint, Plaintiff performed her job in a satisfactory or better manner.

6. Plaintiff worked more than 1250 hours in the year prior to the events that form the basis of the complaint.

7. On or about May 27, 2017, plaintiff suffered a fall at her home as she was getting ready for work.

8. During the fall, Plaintiff broke her left ankle in three places, which required a trip to the emergency room to set the ankle.

9. Right after the fall, Plaintiff called her direct manager, Hannah (LNU) to report the injury, but she could not reach her.

10. Plaintiff then called Melissa (LNU), Assistant Server Manager to report the injury and advise her that she probably would not make it in to her shift.

11. Immediately after she returned home from the hospital, Plaintiff called the Server Manager, Hannah (LNU), and told her that she needed to be off of work to recuperate from the fall.

12. Hannah asked Plaintiff when she would be returning to work several times.

13. In response, Plaintiff told her that she was not sure, but that it would probably be four to six weeks before she could return.

14. The next day, Plaintiff called Richard Crawford, the General Manager of the Tacky Jack's 2, and told him that she had broken her ankle and would require surgery on June 1, 2017.

15. Crawford told her that he had heard about the fall and that he was praying for her. He then told her to hurry up and get better.

16. Crawford did not mention anything about Plaintiff returning to work.

17. On or about June 1, 2017, Plaintiff underwent surgery to repair the ankle so that it would heal properly.

18. Plaintiff's doctor advised Plaintiff that she needed to be off of her foot and on crutches after the accident and told her about FMLA.

19. On advice of her doctor, Plaintiff requested the FMLA paperwork from Crawford to apply for leave to recuperate.

20. In response, Crawford told Plaintiff that he did not know what FMLA was but it did not guarantee her job and that she would not get any money.

21. Crawford ignored Plaintiff's request for FMLA.

22. When Plaintiff came to the restaurant to request the paperwork, Crawford would not talk to her.

23. Plaintiff's husband also requested to speak with the manager about the FMLA and get her check, but Crawford would not see him.

24. Instead, Crawford left the restaurant.

25. Plaintiff never received any paperwork to request FMLA.

26. Plaintiff kept in touch with the management team about her return and her recuperation.

27. On or about July 28, 2017, Plaintiff called back to the office to report that she was able to work.

28. When she spoke to Crawford about returning, he told her that he did not have a position for her.

29. Crawford further said he "might have a position in a day, a week a month, or a year, you know how this business is."

30. Plaintiff then asked for FMLA paperwork and asked if Crawford would talk to David, the owner of the company to see what was going on.

31. Crawford then replied that there was no paperwork and that the situation had nothing to do with the owner, because he was the manager and he did not have to clear the decision with the owner.

32. Defendant terminated Plaintiff's employment on or about July 1, 2017.

IV. **COUNT ONE - FMLA INTERFERENCE**

33. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 32 above as if fully set forth herein.

34. During the 12-month period prior to May 27, 2017, Defendant employed Plaintiff for at least 1,250 hours of service.

35. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's May 27, 2017, accident.

36. During the week of May 27, 2017, Defendant employed fifty or more employees that worked within 75 miles of the location where Plaintiff worked.

37. On May 27, 2017, Plaintiff provided notice of for unforeseeable FMLA leave to Hannah (LNU), Melissa and the store Manager, Crawford.

38. Plaintiff provided notice of her unforeseeable need to take FMLA leave on the same day that the need for FMLA leave arose.

39. Prior to May 27, 2017, Plaintiff had never previously informed Defendant of the need for FMLA leave.

40. Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

41. Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

42. Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form OR FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

43. Defendant interfered with Plaintiff's FMLA rights by not allowing her to commence FMLA leave and by not allowing her to return to work following FMLA leave.

44. On June 28, 2017, Defendant terminated Plaintiff's employment for the stated reason of her position being filled.

45. Defendant's employees had knowledge that Plaintiff suffered from an FMLA qualifying condition for which she needed treatment through her doctor from May 27, 2017, until June 28, 2017.

46. As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## V.    COUNT TWO - FMLA RETALIATION

47.    Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 46 above as if fully set forth herein.

48.    During the 12-month period prior to May 27, 2017, Defendant employed Plaintiff for at least 1,250 hours of service.

49.    Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's May 27, 2017, leave.

50.    During the week of May 27, 2017, Defendant employed fifty or more employees that worked within 75 miles of the location where Plaintiff worked.

51.    On May 27, 2017, Plaintiff provided notice of unforeseeable FMLA leave to Hannah (LNU), Melissa (LNU) and Richard Crawford.

52.    Plaintiff provided notice of her unforeseeable need of FMLA leave as soon as practicable due to a medical emergency.

53.    Prior to May 27, 2017, Plaintiff had never previously informed Defendant of the need for FMLA leave.

54.    Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

55.    Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

56. Defendant willfully failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

57. Defendant terminated Plaintiff's employment on June 28, 2017.

58. Defendant's employees had knowledge that Plaintiff suffered from an FMLA qualifying condition for which she needed treatment through her doctor from May 27, 2017, until June 28, 2017.

59. Defendant's manager, Richard Crawford, informed Plaintiff that Defendant terminated her employment.

60. Defendant's manager, Richard Crawford, made the decision to terminate Plaintiff's employment.

61. Defendant's manager, Richard Crawford, made the decision to terminate Plaintiff's employment, in whole or part, because of Plaintiff's exercise of her FMLA rights.

62. On June 28, 2017, Defendant terminated Plaintiff's employment for the stated reason of her position being filled.

63. As a result of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

VII. **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family Medical Leave Act;

B. Enter an Order requiring the Defendant to make Plaintiff whole by awarding her reinstatement to the position she would have had, had she not been terminated; and,

C. Award Plaintiff back pay, together with employment benefits, front pay, nominal damages, special damages, liquidated damages, compensatory damages, attorneys' fees and costs, and any additional relief or equitable relief as may be determined by the Court to which Plaintiff is entitled.

_____
Kira Fonteneau

_____
Allen D. Arnold

OF COUNSEL
Fonteneau & Arnold LLC
2151 Highland Avenue South, Suite 205
Birmingham, Alabama 35205
T: 205.252.1550 F:205.502.4476

**PLEASE SERVE DEFENDANT(S) AT:**

COTTON BAYOU MARINA, INC.
George Skipper
PO BOX 2080
Orange Beach, Alabama 36561-2080

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

*[signature]*

OF COUNSEL